c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LONNIE DOUGLAS, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:17-CV-00808 |
| VERSUS | JUDGE DRELL |
| PETER O'NEAL, *ET AL.*, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## AMENDING AND SUPERSEDING REPORT AND RECOMMENDATION

Before the Court are: (1) a Rule 12(b)(6) Motion to Dismiss, filed by Defendant Michael Kramer ("Kramer") (Doc. 13); (2) a Rule 12(b)(6) Motion to Dismiss, filed by Defendant Catahoula Parish Sheriff's Department ("CPSD") (Doc. 23); and (3) a Rule 12(b)(6) Motion to Dismiss, filed by Defendant Catahoula Parish Sheriff Toney Edwards ("Edwards") (Doc. 24). [1] Pro se Plaintiffs Lonnie Douglas, Henry Douglas, MacArthur Douglas, Viola Douglas, Antionette Douglas, and Lawrence Mathis ("Plaintiffs") filed an opposition. (Doc. 29). The motions highlight separate infirmities in Plaintiffs' claims and pleadings, each of which warrant dismissal. Accordingly, the pending motions should be granted as – and for the reasons – set forth specifically below.

---

[1] Under the caption and listed parties in the Complaint, Plaintiffs named as Defendant "Catahoula Parish, Louisiana Sheriff's Office – Toney Edwards." Throughout the Complaint, Plaintiffs refer to "Catahoula Parish," "Catahoula Parish Sheriff's Department," and "The Sheriff's Office of Catahoula Parish." CPSD and Edwards were both served on September 13, 2017. (Docs. 34, 35).

I. <u>Background</u>

On July 31, 2017, Plaintiffs filed an "Original Complaint Writ of Possession and Contemporaneous Summary Judgment Pursuant to FRCP 56" ("Complaint"). (Doc. 1). Plaintiffs named as Defendants Peter O'Neal ("O'Neal"), George ("Guy") Carroll ("Carroll"), Kramer, CPSD, Catahoula Parish, Louisiana, Edwards, and the United States Department of Agriculture – Sonny Perdue, Secretary of Agriculture ("Defendants"). (Doc. 1). Plaintiffs made a number of claims against Defendants which appear to be premised on the rightful ownership of farmland. (Doc. 1). Plaintiffs claim the property that is the subject of this litigation was illegally sold/foreclosed through the acts or omissions of Defendants. (Doc. 1).

Plaintiffs assert Defendants CPSD, O'Neal, Carroll, and the U.S. Department of Agriculture committed constitutional violations and fraud, and unjustly enriched themselves through O'Neal's sale of the property. (Doc. 1). Plaintiffs allege Defendants CPSD and O'Neal conspired to forcefully remove Lonnie Douglas from his home "in which the Agency did not have a lien or judgment against Mr. Lonnie Douglas." (Doc. 1). Plaintiffs do not reference a date when they allegedly were forcefully removed from the property. (Doc. 1).

Plaintiffs further allege Antionette Douglas and Lawrence Mathis purchased the "home Place," and paid Kramer to do a title search on the property. (Doc. 1). Plaintiffs allege Kramer misrepresented the history of liens on the property when it came up void of any encumbrances. (Doc. 1). Plaintiffs claim the homestead is owned and inhabited by Odessa Douglas and Viola Douglas, who are both TrackB Pigford

Class Members. (Doc. 1). Plaintiffs allege they have yet to receive a formal hearing and enjoy a moratorium against foreclosure. (Doc. 1). According to Plaintiffs, Kramer and O'Neal were in violation of conspiracy of 42 U.S.C. § 1985(3), 42 U.S.C. § 1981, and 42 U.S.C. §1983 by fraudulently inducing Plaintiffs to buy the "home place when they knew or [should have] known that the United States did not have a lien or judgment on the parcel described in the less and exception in which as encompassed the home place." (Doc. 1).

Plaintiffs attached a copy of Kramer's 30 Year Title Opinion on the property dated December 22, 2014. (Doc. 1-2). The title opinion showed no mortgages, judgments, or liens. (Doc. 1-2).

Kramer, CPSD, and Edwards responded with separate motions to dismiss (Docs. 13, 23, 24), seeking dismissal of all claims against them, respectively. The motions to dismiss each argue Plaintiffs' allegations do not state a claim upon which relief can be granted warranting dismissal under Fed. R. Civ. P. 12(b)(6).

II.  **Law and Analysis**

    A.  **Standards governing the 12(b)(6) Motion to Dismiss**

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement…showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face."

3

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

### B. Plaintiffs fail to state a plausible claim against CPSD.

CPSD claims that it is not a legal entity capable of being sued. (Doc. 23). Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). Thus, Louisiana law governs whether CPSD has the capacity to be sued in this action.

Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Art. 24. It is well settled under Louisiana law that a sheriff's department is not a legal entity capable of being sued. See Valentine v. Bonneville Ins. Co., 691 So. 2d 665, 668 (La. 1997); see also Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 283 (5th Cir. 2002) ("The law of Louisiana affords no legal status to the Parish Sheriff's Department wherein said department can sue or be sued, such status being reserved for the Sheriff individually."). Thus, the CPSD is not a juridical person capable of being sued under state or federal law. Plaintiffs' claims against the CPSD should be dismissed.

### C. Plaintiffs' claims against Kramer and Edwards under Louisiana law, 42 U.S.C § 1985(3), and 42 U.S.C. § 1983 are prescribed.

Kramer and Edwards both allege in their respective motions to dismiss that Plaintiffs' claims have prescribed. (Docs. 13, 24). Plaintiffs make general references to a 1996 judgment in Civil Action 96-0064. (Doc. 1). Plaintiffs allege a judgment in rem was entered against Henry Douglas, Viola Douglas, and Mac Arthur Douglas for

5

the Douglas Farm. (Doc. 1). Plaintiffs allege excepted out of the 1996 judgment was a parcel of land bought by Lonnie Douglas from Ed and Odell Douglas in 1979, and a homestead with approximately 4 acres in which the Douglas House sits. (Doc. 1). Plaintiffs claim the 1996 judgment noted the farm was to be sold at auction, but that O'Neal colluded with Carroll to arrange the sale and have the CPSD remove Lonnie Douglas from the property. (Doc. 1).

Plaintiffs do not reference a date when they were forcefully removed from the property. (Doc. 1). Plaintiffs allege the Pigford Class Action suit was started in 1997 and was finalized in 1999. Plaintiffs claim that as a result, Henry Douglas received a debt write-off of the farm ownership loan in 2008, and all farm operating Equipment. (Doc. 1). However, Plaintiffs state O'Neal "stonewalled the agency decision and colluded with other defendants, ultimately selling the farm in 2014." (Doc. 1). Also, Kramer's 30 year title opinion dated December 22, 2014, was attached to the Complaint. (Doc. 1-2). Construing the Complaint liberally, December 22, 2014 is the latest date referenced by Plaintiffs.

Kramer argues that Plaintiffs' Complaint, filed June 23, 2017, was filed over two years after his title opinion was issued. (Doc. 13). Edwards argues Plaintiffs' Complaint is bereft of sufficient information to create a comprehensive timeline of events, but ascertains the latest allegation seems to be in 2014. (Doc. 24). Edwards argues Plaintiffs' Complaint is prescribed on its face. Kramer and Edwards claim a one-year prescriptive period applies to Plaintiffs' claims. (Doc. 13, 24).

6

Since there is no federal statute of limitations, the applicable statute in a 42 U.S.C § 1983 action is the forum state's personal injury prescriptive period, which in Louisiana is one year. William v. Beauregard Par., 2015 WL 7957031, at *3 (W.D. La. Aug. 24, 2015), report and recommendation adopted sub nom. Williams v. Beauregard Par., 2015 WL 8076434 (W.D. La. Dec. 4, 2015) (citing Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998)). While state law determines the limitations period, federal law governs the accrual of a § 1983 action. Id. That same one-year period applies to claims under § 1985. Smith v. Humphrey, 2012 WL 1970883, at *2 (W.D. La. 2012) (citing McCoy v. Claiborne Parish Detention Center, 2011 WL 1898910, *3 (W.D. La. 2011)).

Federal law provides that a claim accrues the moment the plaintiff knows or has reason to know of the injury underlying complaint. Id. (citing Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987)). To the extent Plaintiffs' claims are brought under Louisiana law, § 1985(3), and § 1983, the prescriptive period is one year. Based on a liberal reading of Plaintiffs' allegations, Plaintiffs' cause of action accrued, at the latest, on December 22, 2014. Suit was not filed until June 2017, more than one year after the alleged misconduct. Plaintiffs' claims under Louisiana law, § 1985(3), and § 1983 are prescribed.

Plaintiffs' claims under 42 U.S.C. § 1981 are a different matter. Section 1981 does not contain a statute of limitations. Willis v. Cleco Corp., 2011 WL 4443358, at *4 (W.D. La. 2011) (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371 (2004)). The statute of limitations under § 1981 is either one year or four years,

depending on the type of claim. See Jones, 541 U.S. 369, 382-83 (2004). The one-year prescriptive period applies when the cause of action could have been brought under § 1981 before it was amended by the Civil Rights Act of 1991 (1991 Act), 105 Stat. 1071. Id. On the other hand, where a plaintiff's claim was made possible by a post-1990 enactment, including the 1991 Act, 28 U.S.C.S. § 1658's four-year statute of limitations applies. Id.

Plaintiffs have not alleged facts sufficient for the Court to determine what type of claim Plaintiffs allege under 42 U.S.C. § 1981. Therefore, the Court cannot determine whether Plaintiffs' § 1981 claims have prescribed. Nevertheless, Plaintiffs have failed to allege anything more than conclusory allegations against Edwards and Kramer under § 1981.

### D. Plaintiffs fail to state a plausible claim against Kramer.

Plaintiffs made the following allegations against Kramer:

(1) "Antionette Douglas and Lawrence Mathis purchased the homestead for $60,000 to keep her mother and aunt from being homeless. Lawrence Mathis and Antionette Douglas paid Michael Kramer to do a title search that came up void of any encumbrances. In fact, upon belief and fact, knew that the homeplace was not part of the 1996 judgment. It is also, upon belief and fact, that Kramer has a history of defrauding black farmers out of land in collusion with Peter O'Neal throughout the Peter O'Neal Service area."
(2) "In addition, the defendants are liable for violations of 42 U.S.C. 1985(3) – Civil Conspiracy, Unjust Enrichment, misrepresentation of a contract, Louisiana Law on Contractual Fraud and Louisiana Law on Contract Confirmation."
(3) "In addition, the defendants are liable for violating the moratorium provision of the Pigford Consent Decree and section 14012 of the Food Energy and Conservation Act that also provided moratorium relief against foreclosure until the Track B members have had a hearing on the merits stemming from the claims in the Pigford Class Action."

(4) "Plaintiffs Antionette Douglas and Lawrence Mathis purchased the home Place for $60,000. The two plaintiffs paid defendant Mike Kramer to do a title search on the property. Defendant Kramer misrepresented the history of liens on the property as evidenced by the aforementioned 96 judgment in rem when the less and exceptions of the stated judgment showed that the United States did not have a judgment or lien on the Homeplace."

(5) Upon belief and facts, defendants Kramer and O'Neal were in violation of conspiracy of 42 U.S.C. 1985(3), 42 U.S.C. 1981, and 42 U.S.C. 1983 by fraudulently inducing the plaintiffs to buy the home place when they knew or known that The United States did not have a lien or judgment on the parcel described in the less and exception in which as encompassed the home place."

(6) "Moreover, defendant Peter O'Neal is liable for a Bivens claim for fraudulently inducing a contract and doing so outside the scope of his employment. Defendant United States is liable for unjust enrichment. Plaintiff offers Ex. 2, title search by defendant Kramer and Ex. 3 Quit Claim Deed."

Kramer states that the only facts in Plaintiffs' complaint regarding him are that plaintiffs Antionette Douglas and Lawrence Mathis paid Kramer to perform a title search on the subject property. (Doc. 13). He notes that his 30 year title opinion shows no mortgages, judgments, or liens. (Doc. 13). Kramer argues this comports with Plaintiffs' allegation that Kramer "knew or [should have] known that the United States did not have a lien or judgment on the parcel…." (Doc. 13). Thus, Kramer asserts that there are no allegations that his title opinion is incorrect. (Doc. 13). Kramer alleges there are no other facts concerning him. (Doc. 13). Kramer argues that since there are no allegations that the title opinion is incorrect, there are no facts in Plaintiffs' Complaint that give rise to any potential causes of action. (Doc. 13).

In support of Plaintiffs' allegations that Kramer conspired with O'Neal, Plaintiffs allege Kramer "knew or known that The United States did not have a lien

or judgment on the parcel." (Doc. 1). Yet, Kramer's title opinion attached to the Complaint shows no liens or judgments on the property. (Doc. 1-2).

Also, Plaintiffs have failed to allege any facts that would support a claim that Kramer, through act or omission, prevented them from making, performing, modifying, or terminating a contract. Plaintiffs do not allege any facts to form a cause of action regarding their allegations of interference with a contract, contractual fraud, or "contract confirmation" under state or federal law.

Title 42 U.S.C. § 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contract . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(1). To succeed on a claim under § 1981, Plaintiffs must show that (1) they are a member of a racial minority, (2) the defendant had an intent to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288-89 (5th Cir. 2004).

Other than alleging that Kramer prepared a title opinion, Plaintiffs make the conclusory allegation that Kramer has a history of defrauding black farmers in collusion with O'Neal. (Doc. 1). Plaintiffs allege no facts to support this claim. And Plaintiffs do not allege any specific facts relating to a contract in reference to Kramer, other than his preparation of a title opinion. (Doc. 1). Rather, as Kramer argues, at least two of the Plaintiffs (Antionette Douglas and Lawrence Mathis) were able to enter into a contract for the purchase of property. (Docs. 1, 13). Kramer is not alleged to be a party to that contract. (Docs. 1, 13).

Outside of Plaintiffs' allegations that Kramer prepared a title opinion, and that the opinion showed no liens or judgments, Plaintiffs have asserted only conclusory allegations against Kramer. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 U.S. at 679. In reading the Complaint as liberally as possible, the Court discerns no factual basis for the conclusory allegations under 42 U.S.C. § 1981 – or for any other claim – against Kramer.[2] Kramer's motion should be granted, and Plaintiffs' claims against him should be dismissed.

### E. Plaintiffs fail to state a plausible claim against Edwards.

Plaintiffs' Complaint contains the following allegations against Edwards:

(1) "Even though the farm was written off by the Agency, Peter O'Neal colluded with Guy Carroll to perfect and arrange sale and the Catahoula Sheriff's Depart [sic] to remove Lonnie Douglas from the property, in which there was no lien on [it] by the United States and to remove Odessa and Viola Douglas from the Home Place in which [it] was not subject to judgment or part of the farm in which Henry Douglas owned."
(2) "Defendants Catahoula Parish…violated the Due Process Clause and Fifth Amendment, interfered with Mr. Douglas['s] paid in full mortgage with Sicily Island Bank…, committed fraud by attaching a lien to a mortgage in which it had no interest…"
(3) "In addition, the defendants are liable for violations of 42 U.S.C. 1985(3) – Civil Conspiracy, Unjust Enrichment, misrepresentation of a contract, Louisiana law on Contractual Fraud and Louisiana Law on Contract Confirmation."
(4) "Defendants Peter O'Neal, and Catahoula Parish attempted to forcefully remove Plaintiffs Odessa Douglas and Viola Douglas from the home place because the plaintiff [sic] are black and members of a protected class and violated the Due Process Clause of the Fifth Amendment and are liable for tortious interference of The Pigford Consent Decree, Louisiana Fraud Upon a Contract, Louisiana

---

[2] Although these claims were dismissed as prescribed, the Court would reach the same conclusion with regard to Plaintiffs' claims against Kramer under Louisiana law, 42 U.S.C. § 1983, and 42 U.S.C. 1985(3).

11

> Confirmation of a Contract, Conspiracy under 42 U.S.C. 1985(3), racial intimidation, 42 U.S.C. 1981, and 42 U.S.C. 1983 for the denial of payment for the Homeplace. In addition, the defendants are liable for violating the moratorium provision of the Pigford Consent Decree and section 14012 of the Food Energy and Conservation Act that also provided moratorium relief against foreclosure until the Track B members have had a hearing on the merits stemming from the claims in the Pigford Class Action."
>
> (5) "Defendants O'Neal, Carroll and Catahoula Parish Sheriff's Department are liable for Conspiracy of 42 U.S.C. 1985 by racial intimidation and forcefully removing or otherwise selling the farm belonging to and equipment belonging to Henry Douglas and Mac Arthur Douglas…Defendant Catahoula Parish is liable for knowing or should have known that the judgment from 1996 was superseded by a settlement in favor of Henry Douglas or otherwise Negligence."

Edwards argues Plaintiffs provide no explanation of what he is alleged to have done. (Doc. 24).[3] Edwards argues there is no explanation of how or when he "colluded" or "conspired" with any other defendant, how or when he "forcefully" removed anyone from any location, or how or when he violated anyone's rights in any fashion. (Doc. 24). Edwards states there is no explanation of how or when he conducted a defective property sale. (Doc. 24). He argues there is no explanation of how or when he interfered with any contract, mortgage, or consent decree. (Doc. 24). And he alleges there is no explanation of how or when he was negligent due to a lack of knowledge of a 1996 judgment (or of how that knowledge in any way bears a causal relationship with any of the conclusory allegations made). (Doc. 24). The Court agrees.

---

[3] Edwards, appearing solely for this motion to dismiss, and reading the pro se Complaint as liberally as possible, premised his motion on the assumption that the allegations in the Complaint against Catahoula Parish are directed against Edwards given that Catahoula Parish is not actually a named defendant. (Doc. 24). Edwards notes he is not the Parish of Catahoula. (Doc. 24).

Plaintiffs' claims as to Edwards contain conclusory allegations of conspiracy and constitutional violations, but do not set forth any specific facts. (Doc. 1). In one allegation of the Complaint, Plaintiffs allege they were forcefully removed from property for which there was no lien, then go on to state that same defendant committed fraud and attached a lien to a mortgage in which it had no interest. (Doc. 1). Plaintiffs' Complaint contains various restatements of the law, but does not enumerate facts to establish how Edwards may have violated any such laws. (Doc. 1). Although allegations by pro se litigants are treated more liberally, "mere conclusory allegations" are still insufficient. U.S. v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996); Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004).

Further, Section 1981 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981. The Supreme Court has stressed that any claim brought under Section 1981 "must initially identify an impaired 'contractual relationship,'…under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-75 (2006). "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Id. at 479-80.

Section 1981 grants a right of action against private actors, but not against local government entities. Oden v. Oktibbeha Cty., 246 F.3d 458, 463 (5th Cir. 2001) ("Subsection (c) [of section 1981] does not expressly create a remedial cause of action against local government entities."). The only provision allowing for a claim against a government entity for violation of the rights protected by § 1981 is § 1983. Id.; Jett,

13

491 U.S. at 731 ("We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."). Thus, Plaintiffs can have no stand-alone claim against Edwards in his official capacity under § 1981. Nevertheless, Plaintiffs have not alleged the existence of a contract, or any racial discrimination or interference in contracting, by Edwards. Plaintiffs have also failed to adequately allege the violation of any constitutional right.

Once again, legal conclusions may only provide the framework of a complaint when supported by factual allegations. Iqbal, 556 U.S. at 679. The Court discerns no factual basis for the conclusory allegations under 42 U.S.C. § 1981 – or for any other claim – against Edwards.[4] Edwards' motion should be granted, and Plaintiffs' claims against him should be dismissed.

III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** this Court's previous Report and Recommendation (Doc. 59) is hereby **AMENDED AND SUPERSEDED** as set forth above.

Further, **IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 23) filed by the Catahoula Parish Sheriff's Department be **GRANTED**, and that Plaintiffs' claims

---

[4] Although these claims were also dismissed as prescribed, the Court would reach the same conclusion with regard to Plaintiffs' claims against Edwards under Louisiana law, 42 U.S.C. § 1983, and 42 U.S.C. 1985(3).

against the Catahoula Parish Sheriff's Department be **DISMISSED WITH PREJUDICE** as the Department is not a juridical person capable of being sued. **IT IS FURTHER RECOMMENDED** that the Motion to Dismiss (Doc. 13) filed by Michael Kramer be **GRANTED.** Plaintiffs' claims against Michael Kramer under Louisiana law, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3) should be **DISMISSED WITH PREJUDICE** as prescribed. Plaintiffs' remaining claims against Michael Kramer – specifically including Plaintiffs' claim under 42 U.S.C. § 1981 – should be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss (Doc. 24) filed by Toney Edwards be **GRANTED.** Plaintiffs' claims against Toney Edwards under Louisiana law, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3) should be **DISMISSED WITH PREJUDICE** as prescribed. Plaintiffs' remaining claims against Toney Edwards – specifically including Plaintiffs' claim under 42 U.S.C. § 1981 – should be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __24th__ day of January, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge