c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LONNIE DOUGLAS, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:17-CV-00808 |
| VERSUS | JUDGE DRELL |
| PETER O'NEAL, *ET AL.*, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are: (1) a Rule 12(b)(6) Motion to Dismiss (Doc. 122), filed by Defendant George Carroll, III ("Carroll"); and (2) Rule 12(b)(1) and Rule 12(b)(6) Motions to Dismiss (Doc. 107), filed by Defendants Sonny Perdue ("Perdue"), Secretary of the United States Department of Agriculture ("USDA"),[1] and Peter O'Neal ("O'Neal") (collectively "Defendants"). Pro se Plaintiffs Lonnie Douglas, Henry Douglas, MacArthur Douglas, Viola Douglas, Antionette Douglas, and Lawrence Mathis ("Plaintiffs") oppose Carroll's motion. (Doc. 127). Plaintiffs also seek leave to amend the complaint. (Docs. 67, 124).[2]

Because Plaintiffs' proposed amendments would be futile, Plaintiffs' motions for leave (Docs. 67, 124) should be DENIED.

---

[1] Plaintiffs' Complaint names Defendant "US Department of Agriculture – Sonny Perdue, Secretary of Agriculture." (Doc. 1). Plaintiffs sue Secretary Perdue exclusively in his official capacity. (Doc. 1).

[2] Given its redundancy, no additional briefing period is necessary to address Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 124).

Because Plaintiffs fail to state a plausible claim for relief against Carroll, Carroll's Motion to Dismiss (Doc. 122) should be GRANTED.

Because the Court lacks subject matter jurisdiction over Plaintiffs' claims to the extent they allege violations of the Consent Decree in Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999) (the "Pigford Consent Decree"), and over Plaintiffs' tort claims and civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), against USDA, Perdue (in his official capacity), and O'Neal (in his official capacity), Defendants' 12(b)(1) Motion to Dismiss (Doc. 107) should be GRANTED.

Because Plaintiffs failed to state a plausible claim for relief against O'Neal in his individual capacity, because Plaintiffs' claims under Louisiana law, § 1983, and § 1985(3) are untimely, and because Plaintiffs' claims, to the extent they relate to Civil Action Number 1:96-cv-00064, are barred by *res judicata*, Defendants' 12(b)(6) Motion to Dismiss (Doc. 107) should be GRANTED. Plaintiffs' claims against Carroll, USDA, Perdue, and O'Neal under Louisiana law, § 1983, and § 1985(3) should be dismissed with prejudice. Plaintiffs' remaining claims should be dismissed without prejudice.

Since dismissal is recommended, all remaining motions in this action should be denied as moot.

I.    <u>Background</u>

On June 23, 2017, Plaintiffs filed an "Original Complaint Writ of Possession and Contemporaneous Summary Judgment Pursuant to FRCP 56" ("Complaint"). (Doc. 1). Plaintiffs named as Defendants Peter O'Neal ("O'Neal"), George ("Guy") Carroll ("Carroll"), Michael Kramer ("Kramer"), Catahoula Parish Sheriff's

Department ("CPSD"), Catahoula Parish, Louisiana, Catahoula Parish Sheriff Toney Edwards ("Edwards"), and the United States Department of Agriculture ("USDA") – Sonny Perdue ("Perdue"), Secretary of Agriculture (collectively "Defendants"). (Doc. 1). The remaining Defendants are Carroll, USDA, Perdue (in his official capacity only), and O'Neal (in his official and individual capacity). Plaintiffs' claims against all other Defendants have been dismissed. (Doc. 94).

Plaintiffs' Complaint, while difficult to follow and convoluted, asserts a number of claims against the remaining Defendants which appear to be premised on the rightful ownership of 172 acres of farmland. (Doc. 1). Plaintiffs claim the property that is the subject of this litigation was illegally sold or foreclosed through the acts or omissions of Defendants. (Doc. 1). Plaintiffs allege the property was obtained by the United States pursuant to a judgment *in rem*, Civil Action No. 96-0064. (Doc. 1). Plaintiffs assert the action resulted in loss of property due to a lien that should not have attached to the property. (Doc. 1).

Citing the Pigford Consent Decree,[3] Plaintiffs assert the sale of the farm property was improper and illegal. (Doc. 1). Plaintiffs allege that even though the

---

[3] Pigford was a class action on behalf of thousands of African-American farmers who claimed they had been discriminated against because of their race in connection with the USDA's administration of farm loan programs. The Pigford litigation culminated with the entry of a consent decree that set forth a process for resolving individual claims against the USDA. See Pigford, 185 F.R.D. at 82. Any individual seeking relief under the consent decree was required to submit a claim package to the "Facilitator" who determined than an individual claimant was a member of the plaintiff class. The claimant then had the ability to proceed under one of the two tracks – "Track A" or "Track B" – for determining the merits of his or her claim. Id. at 94. Plaintiffs allege in the Original Complaint that Henry Douglas prevailed as a Pigford Class Member, and that Odessa Douglas and Viola Douglas are both Track B Pigford Class Members who have yet to receive a formal hearing. (Doc. 1). However, Plaintiffs then allege Henry Douglas and Viola Douglas are prevailing Track A Members. (Doc. 115). Defendants show Lonnie Douglas, Henry Douglas, MacArthur Douglas, and Viola Douglas all participated in Pigford I, and filed claims as members of the Pigford class action Track A. However,

3

farm was written off by the "agency," O'Neal colluded with Carroll to perfect and arrange a sale, and for the CPSD to remove Lonnie Douglas from the property. (Doc. 1). Plaintiffs further allege Carroll, along with CPSD, and O'Neal violated the Due Process Clause of the Fifth Amendment, interfered with his "paid in full mortgage," committed fraud by attaching a lien to a mortgage in which it had no interest, and unjustly enriched the "agency" by allowing O'Neal to sell the property. (Doc. 1). Plaintiffs claim O'Neal conspired with Carroll to purchase the farm belonging to Henry Douglas that had been written off by the "agency" in accordance with the Pigford Consent Decree. (Doc. 1). Plaintiffs further allege O'Neal arranged a private sale with Carroll. (Doc. 1). Plaintiffs do not reference a date when they allegedly were forcefully removed from the property. (Doc. 1). Plaintiffs assert claims against O'Neal under Brown v. Nationsbank Corp., 188 F.3d 579, 590 (5th Cir. 1999) (citing Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)).

Plaintiffs claim Henry Douglas and MacArthur Douglas farmed the "Douglas Place" and were responsible for the farm ownership loan and farm operating loan. (Doc. 1). Plaintiffs further allege Henry Douglas and MacArthur Douglas were never served with the action that resulted in a 1996 *in rem* judgment. (Doc. 1). Plaintiffs claim the homestead is owned and inhabited by Odessa Douglas and Viola Douglas, who are both "Track B Pigford Class Members." (Doc. 1). Plaintiffs further claim

_____

Track B claims were also resolved by Stipulation and Order save those specifically listed in the Order. Pigford v. Vilsack, No. 97-7978 (D.D.C.) (Doc. 2008 – Nov. 2, 2015) (Def. Ex. Q).

they have yet to receive a formal hearing, and enjoy a moratorium against foreclosure. (Doc. 1).

Plaintiffs allege a breach of the United States's fiduciary duty concerning the settlement agreement with Henry Douglas under the <u>Pigford</u> Consent Decree, "negligent retainment" of O'Neal after violating the stipulations of the <u>Pigford</u> Consent Decree, and "constitutional and state violations." (Doc. 1). Plaintiffs allege state law torts of fraud, fraudulent inducement, unjust enrichment, express or tacit confirmation of contract, and moratorium against foreclosure under § 14012 of the Food Energy and Conservation Act. (Doc. 1). Plaintiffs seek damages in the amount of $10,000,000 for punitive damages, compensatory damages, treble damages, and reliance damages. Plaintiffs also seek return of the homestead to Lonnie Douglas and 172 acres of farmland to Henry Douglas. (Doc. 1). Plaintiffs have filed numerous variations of pleadings and motions, including voluminous exhibits, all seeking essentially that same relief.

Carroll seeks dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. (Doc. 122).[4] Carroll alleges Plaintiffs have shown no set of facts that would entitle them to relief. (Doc. 122). Plaintiffs oppose Carroll's motion. (Doc. 127).

USDA, Perdue, and O'Neal also seek dismissal for lack of subject matter jurisdiction, or for failure to state a claim upon which relief can be granted. (Doc.

---

[4] Carroll's proposed motion (Doc. 56) was initially filed on November 24, 2017, but was defective due to an entry of default. (Docs. 40, 57). On May 30, 2018, the district judge ordered the entry of default be set aside (Doc. 121), and Carroll's motion was filed into the record (Doc. 122).

107).  USDA, Perdue, and O'Neal assert they are entitled to a dismissal of all claims against them.  (Doc. 107).   Plaintiffs did not file any document labeled as an opposition.   However, Plaintiffs filed "Plaintiff's Memorandum Claim and Exhibit Timeline in Support of Report and Recommendation in Favor of the Plaintiffs." (Doc. 115).  To the extent Plaintiffs' memorandum addresses USDA's, Perdue's, and O'Neal's arguments, this Court will consider Plaintiffs' memorandum as an opposition.  (Doc. 115).

Plaintiffs seek leave to amend the Complaint.  (Docs. 67, 124).  Plaintiffs allege they seek to add additional facts and claims, and to join additional parties.  (Docs. 67, 124).

## II.    Law and Analysis

### A.    Standards governing the Motion to Amend

Fed. R. Civ. P. 15(a)(1) provides that:

> a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, the party may amend within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  The court should freely give leave when justice so requires.  Fed. R. Civ. P. 15(a)(2).

Ordinarily, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed."  Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted).  Granting leave to amend, however, is not required if the

plaintiff has already pleaded her "best case." <u>Brewster</u>, 587 F.3d at 768 (citing <u>Bazrowx v. Scott</u>, 136 F.3d 1053, 1054 (5th Cir. 1998)). A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." <u>Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.</u>, 620 F.3d 465, 468 (5th Cir. 2010) (citing <u>Briggs v. Mississippi</u>, 331 F.3d 499, 508 (5th Cir. 2003)).

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." <u>Hernandez v. Ikon Ofc. Solutions, Inc.</u>, 306 Fed.Appx. 180, 182 (5th Cir. 2009); <u>accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002). However, that general rule does not apply if an amendment would be futile. <u>Townsend v. BAC Home Loans Serv'g, L.P.</u>, 461 Fed.App'x. 367, 372 (5th Cir. 2011); <u>Jaso v. The Coca Cola Co.</u>, 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 873 (5th Cir. 2000) (quotations and citations omitted); <u>accord Fenghui Fan v. Brewer</u>, 377 Fed.App'x. 366, 367 (5th Cir. 2010).

### B.    <u>Standards governing the 12(b)(1) Motion to Dismiss</u>

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court may dismiss a claim over which it lacks subject-matter jurisdiction. "A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that

the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs), 668 F.3d 281, 287 (5th Cir. 2012). "Plaintiffs bear the burden of establishing subject-matter jurisdiction." Id.

The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss under Rule 12(b)(6). Harrison v. Safeco Ins. Co. of America, 2007 WL 1244268, at *3 (E.D. La. 2007). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a court must accept a plaintiff's factual allegations in the complaint as true. Machete Prods., L.L.C. v. Page, 809 F.3d 281, 287 (5th Cir. 2015). However, a court may "find facts as necessary to determine whether it has jurisdiction." Id. Further, a court need not accept as true legal conclusions masked as factual allegations. Id. "A court can find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Ballew v. Cont'l Airlines, Inc., 668 F.3d 777, 781 (5th Cir. 2012) (quoting Ramming, 281 F.3d at 161).[5]

Moreover, "[b]ecause sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and

---

[5] In deciding a Rule 12(b)(1) motion, a court may consider evidence presented beyond the pleadings, including affidavits and exhibits submitted by the defendant. Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237–38 (5th Cir. 2009); see also Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994). The Fifth Circuit holds, however, that a "Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction cannot be converted into a motion for summary judgment." Maria v. United States ex re. Army Corps of Engineers, 2010 WL 2009968, at *2 (E.D. La. May 17, 2010) (quoting Green v. Forney Eng'g Co., 589 F.2d 243, 246 (5th Cir. 1979)).

not with prejudice." Warnock v. Pecos Cty., Tex., 88 F.3d 341, 343 (5th Cir. 1996). "[T]he district court has broader power . . . to make factual findings which are decisive of jurisdiction . . ." where dismissal for jurisdictional deficiency centers upon a lack of sovereign immunity waiver. See Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981), cert. denied 454 U.S. 897 (1981); see also Price v. United States, 69 F.3d 46, 50 (5th Cir. 1995).

### C.    Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court must draw on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id.[6] While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

---

[6] "In deciding a Rule 12(b)(6) motion to dismiss, a court generally 'may not go outside the pleadings.' Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon 'documents incorporated into the complaint by reference and matters of which a court may take judicial notice' in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)." Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co., CV 17-0200, 2018 WL 2209165, at *4 (W.D. La. May 11, 2018). Plaintiffs' Original Complaint is 23 pages, with 4 pages of exhibits. (Doc. 1). Plaintiffs' proposed amended Complaint consisted of 123 pages, styled as a proposed amendment and "Contemporaneous Summary Judgment," with 36 pages of exhibits attached to the Proposed Amended Complaint and Summary Judgment, along with a Statement of Material Facts with another 26 pages of exhibits attached. (Doc. 67). Plaintiffs also filed an 89-page Motion for Leave to File Second Amended Complaint, which includes 35 pages of proposed exhibits. (Doc. 124). Plaintiffs' Motion for Leave to File Second Amended Complaint is deficient, but, for the purposes of this ruling, is considered by the Court. The Court finds the documents incorporated into the Complaint (Doc. 1), and proposed amendments (Docs. 67, 124), may be considered to the extent they are also referenced by Defendants, without construing the instant motions as a 12(d) motion under the Federal Rules of Civil Procedure.

With respect to a statute of limitations defense, dismissal for failure to state a claim is proper when "it is evident from the pleadings that the action is barred and the pleadings fail to raise some basis for tolling." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); accord Jaso, 435 F. App'x at 351-52.

D.    **Plaintiffs' Motions for Leave to Amend (Docs. 67, 124) should be denied as futile.**

For the reasons set forth below, Plaintiffs' proposed amendments would not survive a motion to dismiss.  While Plaintiffs attempt to provide more specific allegations, Plaintiffs' proposed amendments fail to establish facts sufficient to cure the deficiencies discussed below.  (Docs. 67, 124). Plaintiffs' proposed Second Amended Complaint is virtually identical to the first proposed amendment.  (Docs. 67, 124).  Additionally, Plaintiffs proposed allegations are essentially the same as the original Complaint, simply stated in a different manner.  (Docs. 67, 124).  Thus, Plaintiffs' amendments are futile.  See Stripling, 234 F.3d at 873.  Plaintiffs' Motions for Leave to Amend (Docs. 67, 124) should be denied.

E.    **The Court lacks subject matter jurisdiction over Plaintiffs' allegations of violations of the Pigford Consent Decree, tort claims, and civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985(3) against USDA, Perdue, in his official capacity, and O'Neal, in his official capacity.**

1.    **Sovereign Immunity**

The doctrine of sovereign immunity bars all lawsuits against the United States and federal agencies like the USDA unless Congress has consented to the action.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("[A]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); In re Supreme Beef

Processors, Inc., 468 F.3d 248, 251–52 (5th Cir. 2006) (en banc) (citing Hercules, Inc. v. United States, 516 U.S. 417, 422 (1996)) ("The Constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit."); Williamson v. U.S. Dept. of Agriculture, 815 F.2d 368 (5th Cir. 1987) ("Sovereign immunity bars suits against the United States government, its departments and agencies, and its officers and employees in their official capacity.").

Unless immunity has been waived, courts lack subject matter jurisdiction. Willoughby v. United States ex re. U.S. Dep't of Army, 730 F.3d 476, 479 (5th Cir. 2013) (per curiam); Meyer, 510 U.S. at 475 (citing United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[S]overeign immunity is jurisdictional in nature.").  This includes any actions seeking money damages as well as actions requesting equitable, nonmonetary relief.  Mitchell, 463 U.S. at 212.  The waiver of sovereign immunity should be narrowly construed in favor of the United States. See United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992); Mitchell, 463 U.S. at 212.

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity, and the sole basis of recovery for some tort claims against the United States. See 28 U.S.C. § 1346 and § 2671, et seq.; In re Supreme Beef Processors, 468 F.3d at 252 n. 4.  Generally, the FTCA authorizes claims against the United States for money damages for "injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).  Section 2674 provides that the United States shall be liable in the same manner and to the same extent as a

private individual under like circumstances. 28 U.S.C. § 2674.  Moreover, the FTCA specifies that the law of the state in which the act or omission occurred determines liability. 28 U.S.C. § 1346(b)(1).

However, certain exceptions deprive courts of subject matter jurisdiction and cannot be waived. Hayes v. United States, 899 F.2d 438, 450–51 (5th Cir. 1990). Tort claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights are expressly excluded from the FTCA's waiver of sovereign immunity.  28 U.S.C. § 2680(h); see In re Supreme Beef Processors, 468 F.3d at 252. Congress also explicitly retained sovereign immunity for claims based upon "an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); see Freeman v. United States, 556 F.3d 326, 335 (5th Cir. 2009).

Moreover, the FTCA functions as the exclusive remedy for a federal employee's tortious acts committed in the scope of employment. 28 U.S.C. § 2679(b)(1); In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs), 668 F.3d at 287 (citing Brown v. United States, 653 F.2d 196, 201 (5th Cir.1981)).  Plaintiffs bear the burden of showing their factual allegations demonstrate an "unequivocal waiver of sovereign immunity." Spotts v. United States, 613 F.3d 559, 568 (5th Cir. 2010) (citation omitted).

Defendants assert Plaintiffs do not invoke the FTCA, or explain how the claims are subject to the jurisdiction of this Court. (Doc. 107-1). Defendants argue that numerous claims of Plaintiffs sound in tort such as: (1) citation to the Louisiana law on contractual fraud and fraud; (2) intentional interference with the Pigford Consent Decree; (3) fraudulent inducement; and (4) unjust enrichment. (Doc. 107-1). Defendants contend Plaintiffs have not established jurisdiction of this Court over Plaintiffs' state law claims. (Doc. 107-1).

The only proper defendant in an FTCA action is the United States, and not a federal agency or individual employees of a federal agency such as the USDA. See 28 U.S.C. § 2679(b)(1). Plaintiffs' tort claims against the USDA, Perdue, in his official capacity and O'Neal, in his official capacity, must be brought under the FTCA. Defendants further contend Plaintiffs failed to establish they filed an administrative claim or that they exhausted all administrative remedies under the FTCA. (Doc. 107-1).

Additionally, Defendants allege Plaintiffs had two years to file all administrative claim under the FTCA. Defendants allege the Complaint is devoid of actual dates of the alleged tortious activity, but attachments include a title opinion from 2014, when Plaintiffs allege the farm was sold. (Doc. 107-1). Defendants assert Plaintiffs' claims, even if cognizable under the FTCA, are time-barred. (Doc. 107-1). Defendants argue Plaintiffs only make conclusory statements as to violations of state

law in their Complaint, and cite no statute for waiver of sovereign immunity as to the state law claims. (Doc. 107-1).

Defendants also allege Plaintiffs assert unclear allegations under 42 U.S.C. §§ 1981, 1983, and 1985(3).  (Doc. 107-1).  Defendants argue the allegations include assertions that O'Neal violated these statutes by "fraudulently inducing the plaintiffs to buy the home place when they knew or known that the United States did not have a lien or judgment on the parcel," racial intimidation, and "forcefully removing or otherwise selling the farm belonging to and equipment belong to Henry Douglas and MacArthur Douglas."  (Doc. 107-1).  Defendants contend Plaintiffs failed to establish subject matter jurisdiction over these claims against the United States or the Secretary. (Doc. 107-1).

Defendants further assert the FTCA limited waiver of sovereign immunity does not extend to any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights," under 28 U.S.C. § 2680(h).  (Doc. 107-1). Defendants allege there has been no waiver of sovereign immunity for the intentional torts alleged by Plaintiff. (Doc. 107-1).  To the extent Plaintiffs' claims fall within these enumerated intentional torts, including misrepresentation, deceit, or interference with contract rights, the Court lacks subject matter jurisdiction over

those claims, as they have been expressly excluded from the FTCA's waiver of sovereign immunity.  28 U.S.C. § 2680(h).[7]

Even assuming Plaintiffs' tort claims fall within the limited waiver of sovereign immunity under the FTCA, that waiver is precluded if the claim is not first "presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b).  To the extent Plaintiffs seek to bring any claims based on the negligent act or omission of O'Neal, an employee of the government, or against any other employee of the United States, they must first follow certain procedural requirements. See 28 U.S.C. § 2675.  Particularly relevant to this action is the prerequisite that a potential plaintiff first file an administrative claim with the relevant federal agency before suing the United States. 28 U.S.C. § 2675(a).

For purposes of the provisions of 28 U.S.C. 2675(a), "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).  Thus, before bringing an action in federal district court under the FTCA, Plaintiffs must fully exhaust all administrative remedies.  See McNeil v. United States, 508 U.S. 106, 113 (1993); Price, 81 F.3d at 521.

---

[7] A plaintiff cannot circumvent the purpose of Section 2680(h) by framing his complaint in terms of the government's negligent failure to prevent the excepted harm.  Truman v. United States, 26 F.3d 592, 594-95 (5th Cir. 1994).

Here, the Court is without subject matter jurisdiction to hear Plaintiffs' claims, to the extent they are based on the negligent act or omission of O'Neal, as an employee of the government, or against any other employee of the United States. Plaintiffs must file an administrative claim with the USDA, a jurisdictional prerequisite to suit under the FTCA. Plaintiffs' civil action against the USDA, insofar as it arises under the FTCA, must be dismissed without prejudice for lack of jurisdiction based upon failure to exhaust administrative remedies mandated by 28 U.S.C. § 2675(a) prior to filing this civil action.

However, the Court notes there is a two year statute of limitations from the accrual date which applies to FTCA claims. See 28 U.S.C. § 2401(b). By a liberal construction of the pleadings, the latest Plaintiffs' tort claims could have accrued was in 2014, when the foreclosed property was sold from government inventory to Carroll, a third party. (Doc. 1). Plaintiffs' claims appear to have accrued earlier than 2014, considering the foreclosure action by USDA began in 1996, and the property was seized and sold into government inventory in 2007. (Doc. 1) Plaintiffs' FTCA claims are clearly barred by the two-year statute of limitations.

The Fifth Circuit has "long recognized that suits against the United States brought under the civil rights statutes are barred by sovereign immunity." Affiliated Prof. Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999) (citing Unimex, Inc. v. United States Dept. of Housing and Urban Development, 594 F.2d 1060, 1061 (5th Cir. 1979) (sovereign immunity bars claims against federal government under 42 U.S.C. §§ 1981, 1982 and 1986)); see also Broadway v. Block,

17

694 F.2d 979, 981 (5th Cir. 1982) (Section 1983 "only covers deprivations under state law"); Rodriguez v. Ritchey, 556 F.2d 1185, 1189 n. 13 (5th Cir. 1977) ("Section 1983, however, does not apply to the actions of the federal government."). Accordingly, Plaintiffs' claims brought under these civil rights statutes should be dismissed.

Moreover, a constitutional tort claim does not arise under the FTCA and is barred by sovereign immunity. McAfee v. 5th Circuit Judges, 884 F.2d 221. 223 (5th Cir. 1989), cert. den., 493 U.S. 1083 (1990) (citing Boda v. United States, 698 F.2d 1174, 1176 (11th Cir. 1983)). While Plaintiffs may bring a Bivens action against individual federal officials for alleged constitutional violations, Plaintiffs may not bring such an action against the United States or its agencies. Such claims are barred by sovereign immunity. See Gibson v. Federal Bureau of Prisons, 121 Fed.Appx. 549, 551 (5th Cir. 2004). The United States has not waived sovereign immunity in a Bivens suit for monetary damages or injunctive relief. Oladipupo v. Austin, 104 F.Supp.2d 623, 624-625 (W.D. La. 2000).

A Bivens action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States. See Affiliated, 164 F.3d at 286. Nor may a Bivens action be brought against a federal agency. See Meyer, 510 U.S. at 484–86; Moore v. United States Dep't of Agriculture, 55 F.3d 991, 995 (5th Cir. 1995). Plaintiffs' constitutional tort claims under Bivens against the USDA, Perdue, in his official capacity,[8] and O'Neal, in his official capacity, should be dismissed for lack of subject

---

[8] There are no specific allegations against Perdue in his official capacity, and there are no allegations whatsoever against him in any individual capacity.

matter jurisdiction.  Sovereign immunity bars such claims against the United States, its agencies, and federal officers acting in their official capacities.

This Court also lacks jurisdiction to enforce Plaintiffs' claims to the extent they allege violations of the <u>Pigford</u> Consent Decree.  Plaintiffs allege tortious interference of the <u>Pigford</u> Consent Decree.  (Docs. 1, 67).  Plaintiffs also allege Defendants are liable for violating the moratorium provisions of the <u>Pigford</u> Consent Decree and Section 14012 of the Food and Energy and Conservation Act that also provided moratorium relief against foreclosure until the Track B members have had a hearing on their claims in <u>Pigford</u>.  (Docs. 1, 67).  Plaintiffs claim they are entitled to full debt relief under the provisions of the <u>Pigford</u> action, including the alleged farm ownership loan in 2008 and all farm operating equipment.  (Docs. 1, 67).

A claim for the enforcement of a settlement agreement is essentially a contract dispute for which there must be some independent basis for federal jurisdiction. <u>See</u> <u>Slaughter v. United States</u>, 555 Fed. Appx. 927, 929 (11th Cir. 2014) (citing <u>Kokkonen</u> <u>v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381–82 (1994)).  "The only court that reserved jurisdiction to enforce Consent Decree violations was the District Court for the District of Columbia."  <u>See</u> <u>Slaughter</u>, 555 Fed. Appx. at 929.  Paragraph 13 of the Consent Decree, entitled "Enforcement Procedures," explains the process for seeking enforcement before that court.[9]  To the extent Plaintiffs' claim violations of the

---

[9] The District Court for the District of Columbia retains jurisdiction to enforce the Consent Decree through contempt proceedings if a party alleges a violation of its terms.  <u>See</u> <u>Pigford</u>, 185 F.R.D. at 110.

<u>Pigford</u> Consent Decree against USDA, Perdue, and O'Neal, this Court lacks subject matter jurisdiction over those claims.[10]

> **F.**   **To the extent Plaintiffs' claims seek to relitigate claims regarding the real property that was the subject of United States v. MacArthur Douglas, _et al._, Civil Action No. 96-0064 (W.D. 1996), those claims are barred by _res judicata._**

"The doctrine of _res judicata_ . . . forecloses relitigation of claims that were, or could have been, raised in a prior action." <u>Landor v. Lafayette Consol. Gov't.</u>, 126 F.Supp.3d 761, 767 (W.D. La. 2015) (citing <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 312-13 (5th Cir. 2004)). If a final judgment on the merits of an action has been rendered, _res judicata_ prohibits parties from relitigating issues that were, or could have been, raised in the prior action. <u>Houston Professional Towing Ass'n v. City of Houston</u>, 812 F.3d 443, 447 (5th Cir. 2016) (citing <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).

The preclusive effect of a prior federal court judgment is controlled by federal _res judicata_ rules. <u>Ellis v. Amex Life Ins., Co.</u>, 211 F.3d 935 (5th Cir. 2000). Under federal law, _res judicata_ is appropriate if: (1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. <u>Id.</u>

---

[10] The Court notes Viola Douglas has brought previous similar allegations, which were dismissed without prejudice. <u>See</u> <u>Viola Douglas v. United States Dep't. of Agriculture</u>, 1:07-cv-02094 (W.D. La. December 28, 2007). Ms. Douglas filed a Complaint regarding the property that was the subject of the 1996 foreclosure action, and requesting extinguishment of the debt to USDA based on <u>Pigford</u>. <u>Id.</u> Through counsel, Ms. Douglas filed a voluntary dismissal without prejudice premised on the fact that any claims under the <u>Pigford</u> Consent Decree must be brought in the United States District Court for the District of Columbia. <u>Id.</u>

Plaintiffs essentially dispute the validity of an *in rem* judgment entered over twenty years ago. See United States v. Douglas, et al., No. 1:96-cv-00064 (W.D. La. 1996). Plaintiffs' allegations relate to the real estate subject to the *in rem* judgment. (Doc. 1). Specifically, Plaintiffs allege the "home place" was separate from the property included in the mortgage securing the farm loan obtained by Henry Douglas and MacArthur Douglas. (Docs. 1, 67). Plaintiffs further assert Antionette Douglas and Lawrence Mathis purchased this property upon which "the USDA did not have a lien." (Docs. 1, 67).[11] Plaintiffs also assert the debt represented by the foreclosed promissory notes had been forgiven by the Pigford Consent Decree. (Docs. 1, 67, 124).

In the prior action, a complaint for foreclosure was filed by the United States against MacArthur Douglas and Henry Douglas, both individually and as principal on behalf of Douglas and Douglas Partnership, on January 9, 1996. See United States v. Douglas, et al., No. 1:96-cv-00064 (W.D. La. 1996). It was amended to add Viola Douglas as a defendant on February 29, 1996. Id. Waiver of service was returned executed as to Viola Douglas on April 22, 1996. Id. Service was returned unexecuted as to MacArthur Douglas and Henry Douglas on May 13, 1996. Id. This Court granted motion for service by publication on May 16, 1996. Id. A default judgment was entered on August 13, 1996 against MacArthur Douglas, Henry Douglas, and Viola Douglas, and ordered that the property be seized and sold by the United States Marshal, at public auction, said proceeds to be in full satisfaction of the judgment.

---

[11] Plaintiffs' proposed amendments asserts the "homeplace" and farmland were owned by the Estate of Ed Douglas and Odell Douglas, but were leased by Henry Douglas. (Docs. 67, 124).

Id.  In the instant action, Plaintiffs now contest the seizure and sale of that same property.  (Docs. 1, 67, 124).

Defendants assert the parties to the foreclosure action are the same as the Plaintiffs in this case. (Doc. 107-1).  Defendants argue MacArthur Douglas, Henry Douglas, or Viola Douglas could have timely made a claim regarding any alleged error in the legal description at that time and did not do so.  (Doc. 107-1).  Defendants further argue that the other Plaintiffs in this matter, though not named in the foreclosure action, were in privity to the Plaintiffs.  (Doc. 107-1).

To the extent that any property was "less and excepted" from the mortgage foreclosed in that case, Defendants assert it is too late to assert that the property foreclosed was not part of the original mortgaged property. (Doc. 107-1).  Defendants argue that the legal description of the "less and except" descriptions in the original mortgage demonstrates the lack of merit of Plaintiffs' assertions. (Doc. 107-1).

While Plaintiffs do not specifically identify the "less and excepted" property in their Complaint, the record shows they attach the deed from Ed Douglas and Odell Douglas to Lonnie Douglas of a one-acre parcel located in the "SE 1/4 of the NE 1/4 of Section 1, T11N, R8E" in Catahoula Parish, Louisiana.   (Docs. 1-2, 107-1). Defendants state the description of the approximate one-acre parcel sold out of the inventory of the United States is located in the "SW 1/4 of the NE 1/4 of Section 1, T11N, R8E." (Doc. 107-1).  Defendants assert neither property is described in the exceptions to the foreclosed mortgage of the USDA or Marshall's Deed to the USDA in Civil Action No. 96-00064. (Doc. 107-1).  Defendants assert the legal description

22

of the property conveyed by USDA to Antionette Douglas and Lawrence Mathis (Doc. 1) is not included in any of the excepted properties in the mortgage foreclosed or the inventory property held by USDA prior to the sale to these Plaintiffs. (Doc. 107-1). Defendants also argue the Pigford recovery by Plaintiffs had no effect on the foreclosure, the sale of the farm to the USDA, or the eventual sale of the farm out of government inventory. (Doc. 107-1).

To the extent that Plaintiffs Lonnie Douglas, Henry Douglas, MacArthur Douglas, Viola Douglas make any claims to the real property that was the subject of the original foreclosure action, Civil Action No. 96-00064, those claims are barred by *res judicata*.

### G. Plaintiffs fail to state a plausible claim for relief against Carroll under §§ 1981, 1983, or 1985(3).

#### 1. § 1981

Carroll argues Plaintiffs implausibly conclude that Carroll violated § 1981. (Doc. 122-2). Carroll asserts § 1981 proscribes discrimination in making or enforcing contracts against, or in favor of, any race. (Doc. 122-2). Carroll argues Plaintiffs' Complaint establishes Carroll is the innocent purchaser of immovable property from a third party, and that no contract was entered into between Carroll and Plaintiffs. (Doc. 122-2).

Title 42 U.S.C. § 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contract . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(1). Plaintiffs must show that (1) they are a member of a racial minority, (2) the defendant had an

intent to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute.   Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288-89 (5th Cir. 2004).

Plaintiffs allege Carroll colluded with O'Neal to perfect and arrange a private sale of the farm to remove Lonnie Douglas from the property. (Doc. 1). Plaintiffs also allege Carroll conspired with O'Neal to purchase the farm belonging to Henry Douglas that had allegedly been written off in accordance with the Pigford Consent Decree. (Doc. 1). Plaintiffs allege Carroll, with Defendants CPSD, O'Neal, and the USDA, interfered with Douglas's paid in full mortgage. (Doc. 1).

However, Plaintiffs' Complaint fails to set forth specific facts that would support a claim that Carroll, through act or omission, prevented Plaintiffs from making, performing, modifying, or terminating a contract.   Plaintiffs do not allege enough facts to form a cause of action regarding their allegations of contractual fraud or "contract confirmation" under state or federal law.   Rather, Plaintiffs make conclusory allegations that Carroll engaged in collusion and conspiracy with O'Neal to purchase the farm, and to interfere with Douglas' mortgage contract. (Doc. 1). Plaintiffs also make conclusory allegations that Carroll is liable for negligence for "profiting on property in which he conspired to interfere with the Pigford [C]onsent [D]ecree." (Doc. 1). However, Plaintiffs fail to allege specific facts to support a claim for relief under § 1981 against Carroll.   Although allegations by pro se litigants are treated more liberally, "mere conclusory allegations" are still insufficient.   United

States v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996); Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004).

### 2.    § 1983

A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of § 1983. Shelley v. Kraemer, 334 U.S. 1, 13 (1948). Carroll is a private person, not a state actor. There are no allegations that Carroll was a state actor or that he conspired with a state actor. Plaintiffs make conclusory allegations that Carroll conspired with O'Neal, a USDA employee. (Doc. 1). Section 1983 applies to state actors, and not to federal agencies, such as the USDA. Richardson v. U.S. Dep't. of Veterans Affairs, 172 F.3d 866 (5th Cir. 1999) (citing Resident Council of Allen Parkway Village v. United States Dep't of Hous. & Urban Dev., 980 F.2d 1043, 1053 (5th Cir. 1993)). Therefore, Plaintiffs' § 1983 claim against Carroll is without merit.

### 3.    § 1985(3)

Carroll asserts there is no cognizable demonstration of a conspiracy in the pleading. (Doc. 122-2). Carroll further asserts Plaintiffs do not articulate any deprivation of equal protection of the laws, or of a right or privilege of a U.S. Citizen. (Doc. 122-2).

Title 42 U.S.C. § 1985(3) prohibits conspiracies to "depriv[e] . . . any person or class of persons the equal protection of the laws." Marceaux v. Lafayette City-Parish

Consol. Gov., 921 F.Supp.2d 605, 642 (W.D. La. 2013) (citing Montoya v. FedEx Ground Package System, Inc., 614 F.3d 145, 149 (5th Cir. 2010)).  "In the Fifth Circuit, a § 1985(3) claim must allege that '(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus."  Id. (citing Wong v. Stripling, 861 F.2d 200, 202-03 (5th Cir. 1989)); see also Dyas v. City of Shreveport, 2017 WL 3711898, at *4 (W.D. La. 2017) (citing Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994)).

In support of Plaintiffs' allegations that Carroll conspired with O'Neal, Plaintiffs allege O'Neal arranged a private illegal sale and took money under the table from Carroll to perfect the illegal sale of the Douglas Farm. (Doc. 1).  Plaintiffs allege this was part of O'Neal's plan devised to further discriminate against Plaintiffs. (Doc. 1).  Plaintiffs allege conspiracy of O'Neal, Carroll, and CPSD by racial intimidation and forceful removing or otherwise selling the farm belonging to Henry Douglas and MacArthur Douglas.  (Doc. 1).  However, Plaintiffs allege no specific facts to support a cause of action against Carroll for conspiracy under 42 U.S.C. § 1985(3).

In reading the Complaint, and proposed amendments, as liberally as possible, the Court discerns no factual basis for Plaintiffs' conclusory allegations under 42

U.S.C. § 1981, 42 U.S.C. § 1983, or 42 U.S.C. § 1985(3) against Carroll.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Iqbal, 556 U.S. at 679.

### H. Plaintiffs' claims against Carroll under Louisiana law, § 1985(3), and § 1983 are untimely.

Carroll asserts Plaintiffs' claims against him have prescribed.  (Docs. 107, 122-2).  As previously discussed, Plaintiffs' Complaint makes general references to the 1996 judgment in Civil Action 96-0064.  (Doc. 1).  Plaintiffs allege a judgment *in rem* was entered against Henry Douglas, Viola Douglas, and Mac Arthur Douglas for the Douglas Farm.  (Doc. 1).  Plaintiffs claim that excepted out of the 1996 judgment was a parcel of land bought by Lonnie Douglas from Ed and Odell Douglas in 1979, and a homestead with approximately 4 acres in which the Douglas House sits.  (Doc. 1).  Plaintiffs further claim the 1996 judgment noted the farm was to be sold at auction, but that O'Neal colluded with Carroll to arrange the sale and have the CPSD remove Lonnie Douglas from the property.  (Doc. 1).

Again, Plaintiffs do not reference a date when they allegedly were forcefully removed from the property.  (Doc. 1).  Plaintiffs allege the Pigford class action started in 1997, and was final in 1999.  Plaintiffs claim that as a result, Henry Douglas received a debt write-off of the farm ownership loan in 2008, and all farm operating equipment.  (Doc. 1).  However, Plaintiffs state O'Neal "stonewalled the agency decision and colluded with other defendants, ultimately selling the farm in 2014."  (Doc. 1).  Also, Plaintiffs attached a 30 year title opinion, dated December 22, 2014, to the Complaint.  (Doc. 1-2).

Carroll maintains Plaintiffs complain of a seizure and sale of property, which was more than one year prior to the Complaint being filed on June 23, 2017. (Doc. 122-2).  Carroll further asserts there is no allegation any defendant took any action preventing the Plaintiffs from pursuing a claim, or that Plaintiffs were kept in ignorance with respect to any cause of action. (Doc. 122-2).  Carroll asserts all Plaintiffs' claims are barred by a one year statute of limitations under La. Civ. Code Art. 3492. (Doc. 122-2).

Since there is no federal statute of limitations, the applicable statute in a 42 U.S.C § 1983 action is the forum state's personal injury limitations period, which in Louisiana is one year. William v. Beauregard Par., 2015 WL 7957031, at *3 (W.D. La. Aug. 24, 2015), report and recommendation adopted sub nom. Williams v. Beauregard Par., 2015 WL 8076434 (W.D. La. Dec. 4, 2015) (citing Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998)).  Nonetheless, while state law determines the limitations period, federal law governs the accrual of a § 1983 action. Id.  That same one-year period applies to claims under § 1985. Smith v. Humphrey, 2012 WL 1970883, at *2 (W.D. La. 2012) (citing McCoy v. Claiborne Parish Detention Center, 2011 WL 1898910, *3 (W.D. La. 2011)).

Federal law provides that a cause of action accrues the moment the plaintiff knows, or has reason to know, of the injury that is the basis of his complaint. Id. (citing Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987)).  To the extent Plaintiffs' claims against Carroll are brought under Louisiana law, § 1983, and § 1985(3), the prescriptive period is one year.  Based on a very liberal reading of Plaintiffs'

28

allegations, the latest date Plaintiffs' cause of action would have accrued is December 22, 2014.[12] (Doc. 1).  Suit was not filed until June 23, 2017, more than one year after the last alleged misconduct.  (Doc. 1). Thus, Plaintiffs' claims against Carroll under Louisiana law, § 1983, and § 1985(3) are prescribed.

Title 42 U.S.C. § 1981 does not contain a statute of limitations.  Willis v. Cleco Corp., 2011 WL 4443358, at *4 (W.D. La. 2011) (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371 (2004)).  The statute of limitations under § 1981 is either one year or four years, depending on the type of claim. See Jones, 541 U.S. at 382-83.  The one-year prescriptive period applies when the cause of action could have been brought under § 1981 before it was amended by the Civil Rights Act of 1991 (1991 Act), 105 Stat. 1071. Id. On the other hand, where a plaintiff's claim was made possible by a post-1990 enactment, including the 1991 Act, 28 U.S.C. § 1658's four-year statute of limitations applies. Id.

Plaintiffs have not alleged facts sufficient for the Court to determine what type of claim Plaintiffs allege under 42 U.S.C. § 1981.  Therefore, the Court cannot determine whether Plaintiffs' § 1981 claims against Carroll have prescribed.  Nevertheless, Plaintiffs have failed to allege anything more than conclusory allegations against Carroll under § 1981.

**I.    Plaintiffs fail to state a cause of action against O'Neal in his individual capacity.**

---

[12] While the sale of the property was in 2014, USDA's *in rem* judgment was obtained in 1996, and the property was sold by the U.S. Marshall to the United States on October 10, 2007.  See United States v. MacArthur Douglas, *et al.*, Civil Action No. 96-0064 (W.D. La. 1996) (Doc. 20).  The property was eventually sold out of the government inventory, and a portion was conveyed and quitclaimed to Lawrence Mathis and Antoinette Douglas for $60,000 on August 4, 2014 (the alleged "home place"), while another portion was conveyed and quitclaimed to Carroll on April 24, 2014.  (Docs. 1, 67).

Defendants argue Plaintiffs fail to establish a cause of action against O'Neal in his individual capacity. (Doc. 107-1). Defendants assert O'Neal is a long-term Parish Supervisor Farm Loan Manager in Catahoula Parish, Louisiana. (Doc. 107-1). Defendants argue O'Neal, as a Farm Service Agency ("FSA") employee, has the delegated authority to perform all actions pertaining to the sale or other disposal of chattel and real property, and to execute and deliver bills of sale or other instruments to effect a sale. (Doc. 107-1). Defendants assert this includes, but is not limited to, offering property for sale; advertising; receiving and accepting offers or bids; and closing sale transactions including the collection of sale proceeds and delivery of quit-claim deeds. (Doc. 107-1). Defendants further claim this broad authority also includes authority to accelerate and declare entire real estate or chattel indebtedness due and payable, request foreclosure of real estate, and bid and purchase real estate at a foreclosure sale. (Doc. 107-1).

Defendants also assert O'Neal is authorized under 7 C.F.R. §§ 1900.2, 1900.3 to take all actions necessary to protect the interests of the FSA in liquidating and collecting on debts owed the agency. (Doc. 107-1). Defendants argue O'Neal was acting within the scope of his authority when he took any action to collect the debt owed by taking proceeds from the sale of farm equipment secured by the loans, selling inventory real estate to third parties or otherwise taking discretionary actions to protect the interest of the FSA. (Doc. 107-1).

Plaintiffs claim O'Neal has "long been discriminating against" them, supported by the finding in the Pigford Consent Decree. (Doc. 1). Plaintiffs claim O'Neal forced

Henry and MacArthur Douglas to sell the equipment that was used for collateral and bring money to the agency. (Doc. 1).  Plaintiffs further claim that even though the farm was "written off by the Agency," O'Neal colluded with Carroll to sell the Douglas Farm, including the property excepted from the 1996 judgment. (Doc. 1).  Plaintiffs assert O'Neal violated the due process clause of the Fifth Amendment, interfered with Douglas's paid in full mortgage, and committed fraud by attaching a lien to a mortgage in which he had no interest. (Doc. 1).

Plaintiffs further claim O'Neal is liable for a <u>Bivens</u> claim for "being the architect of this scheme to defraud Lonnie Douglas and working outside the scope of his [e]mployment." (Doc. 1).  Plaintiffs further assert O'Neal and CPSD attempted to forcefully remove Odessa Douglas and Viola Douglas from the "home place" because they are black.  (Doc. 1).  Plaintiffs claim O'Neal is liable, in his individual capacity, for tortious interference of the <u>Pigford</u> Consent Decree, contract fraud, "confirmation of a contract, conspiracy under § 1985(3), racial intimidation, § 1981, and § 1983 for denial of payment." (Doc. 1).

When federal officials are charged with the commission of common-law torts, they enjoy absolute immunity from liability for actions taken within the scope of their authority. <u>Williamson v. United States Dep't. of Agriculture</u>, 815 F.2d 368, 379 (5th Cir. 1987) (citing <u>Barr v. Matteo</u>, 360 U.S. 564 (1959)).  This absolute immunity requires the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities, and that the action of the official is connected with a "discretionary function."  <u>Id.</u> (internal citations omitted).  A public

official's action will be considered "discretionary" if it is the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability.  Id. (citing Currie v. Guthrie, 749 F.2d 185, 188 (5th Cir. 1984)).

The discretionary function exception to the FTCA retains sovereign immunity for the United States for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency." 28 U.S.C. § 2680(a).

> Discretionary functions include those based on judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991); Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz by Berkovitz, 486 U.S. at 536. In addition, the discretionary function exception only applies to legislative and administrative decisions based on social, economic and political policy. Id. at 537. When properly applied, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Id.

Longino v. U.S. Dep't of Agric., 912 F.Supp.2d 424, 430 (W.D. La. 2012).  However, an action does not fall within the discretionary function exception where governmental agents exceed the scope of their authority as designated by statute or the Constitution. See Sutton v. United States, 819 F.2d 1289, 1293 (5th Cir. 1987)).

The Supreme Court has established a two-part test to determine whether an agency's conduct qualifies as a discretionary function or duty: (1) the Court must assess whether the challenged conduct was discretionary in nature, an act that involves an element of judgment or choice; and (2) if the Court finds the agency's

conduct qualifies as discretionary, then it considers whether the actions taken are susceptible to policy analysis. See Gibson v. United States, 809 F.3d 807, 811-12 (5th Cir. 2016) (citing United States v. Gaubert, 499 U.S. 315, 322-25 (1991)).  Defendants argue both prongs are met in this case. (Doc. 107-1).

Sovereign immunity will not shield federal officials from judicial scrutiny where they committed constitutional torts in their individual capacities. Bivens, 403 U.S. at 397.  In Bivens, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. Bivens is "the counterpart to 42 U.S.C. § 1983," and it extends the protections afforded under § 1983 to parties injured by federal actors. Chapman v. United States, No. 4:06–CV–0426–Y, 2006 WL 3831227, at *1 n. 8 (N.D.Tex, Dec. 27, 2006); see also Izen v. Catalina, 398 F.3d 363, 367 n. 3 (5th Cir.2005) (per curiam).  Moreover, Bivens actions are governed by the same statute of limitations as § 1983 actions.  See La. Civ. Code Art. 3492.

Plaintiffs fail to allege more than conclusory allegations against O'Neal in his individual capacity.  Plaintiffs also fail to set forth specific facts to establish a constitutional violation by O'Neal in his individual capacity.  Rather, Plaintiffs allege O'Neal acted outside the scope of his employment, and that O'Neal engaged in acts of fraud, conspiracy, illegal sale, and illegal taking related to the Douglas property. (Doc. 1).

Plaintiffs assert claims against the USDA for actions taken by O'Neal. However, O'Neal was pursuing his delegated duties to reduce debt owed to the United

33

States, and to sell inventory property held by the United States. O'Neal's actions fall within his delegated duties of reducing delinquent loans, selling collateral to reduce the debt owed, and selling off inventory property of the United States. See 7 C.F.R. §§ 1900.2, 1900.3. Here, O'Neal's acts were within the "discretionary function" exception to the USDA's waiver of sovereign immunity under the FTCA. See Williams v. U.S. Dept. of Agriculture, 2010 WL 5057479, at *2 (M.D. La. 2010) (plaintiffs' claims that the USDA improperly denied disaster relief and loan assistance and rejected plaintiffs' requests for arbitration are acts that fall within the "discretionary function" exception).

Defendants correctly assert Plaintiffs fail to make a colorable claim under Bivens. (Doc. 107-1). Plaintiffs fail to plead sufficient facts that O'Neal acted outside the scope of his employment. Rather, Plaintiffs rely on bare accusations. See Lynch v. Cannatella, 810 F.2d 1363, 1369-70 (5th Cir. 1987). Thus, Plaintiffs fail to state a cause of action against O'Neal in his individual capacity. Regardless, in reading the Complaint most liberally, the latest alleged act by Defendants accrued in 2014. Thus, any amendment by Plaintiffs to state a claim for relief under Bivens would be futile, as Plaintiffs' Bivens claim against O'Neal is barred by the statute of limitations.

**J.    Plaintiffs' claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 _et seq._, should be dismissed for failure to state a claim for relief.**

Plaintiffs also allege indistinct claims under the ECOA. Plaintiffs' Original Complaint contains a citation of law as to the ECOA. (Doc. 1). Plaintiffs allege Odessa Douglas attempted to buy the homestead on three occasions, and the money

was refused by the United States before it sold the property illegally.  (Doc. 1).
Plaintiffs further allege "the Sale is still under the 5 year ECOA statutes[sic] and is
currently under review in the United States Court of Federal Claims." (Doc. 1).  There
are no other allegations in the Original Complaint regarding a claim under the
ECOA.

Plaintiffs' proposed amendments further assert an ECOA claim.  (Docs. 67-1,
124-2).  Plaintiffs allege Henry Douglas was an applicant for farm ownership and
operating loans with the USDA FSA, the creditor.  (Docs. 67-1, 124-2).[13]  Plaintiffs
further allege Lawrence Mathis and Antoinette Douglas "were applicants to purchase
the farmland belonging to Henry Douglas and 'the home place' – alleged creditor."
(Docs. 67-1, 124-2).  Plaintiffs claim Odessa Douglas and Viola Douglas were
applicants to the home purchase, and that Lonnie Douglas was an applicant to a home
loan to Sicily Island Bank.  (Docs. 67-1, 124-2).  Plaintiffs allege all applicants are
black and members of a protected class.  (Docs. 67-1, 124-2).  Plaintiffs claim
Defendants O'Neal, USDA-Perdue, and Carroll discriminated against all Plaintiffs
because Plaintiffs are black by terminating loan contracts and refusing to sell the
property that is the subject of this suit to Plaintiffs.  (Docs. 67-1, 124-2).  Plaintiffs
allege USDA sold the property to Carroll to further discriminate against the Douglas
Family.

---

[13] To the extent this allegation refers to the loans asserted in Plaintiffs' Complaint related to the
Pigford litigation, the Court has already addressed its lack of jurisdiction over those claims.  It is not
clear that Plaintiffs are asserting application for new loans outside of the Pigford litigation.

The ECOA provides that it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. §1691(a). The statute authorizes the recovery of actual damages from creditors, including the federal government, see id. §§ 1691a(e)-(f), 1691e(a), and a court "may grant such equitable and declaratory relief as is necessary to enforce [the ECOA]," as well as "reasonable attorney's fees" to applicants bringing a "successful action." Id. § 1691e(c)-(d). Claims under the ECOA must be filed within five years of the "date of the occurrence of the violation." Id. § 1691e(f).

"To state a claim for relief under the ECOA, the plaintiff must plausibly show that he was discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an 'applicant'; (2) the defendant was a 'creditor'; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." Alexander v. AmeriPro Funding, Inc., 848 F.3d 698, 705–06 (5th Cir. 2017), cert. denied 138 S.Ct. 421 (Nov. 6, 2017) (citing 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a)). "[T]he ECOA does not prohibit discrimination with respect to mortgages purchased on the secondary market; the Act only applies to originating lenders in the primary market." Id. at 706.

An applicant must request credit. Failure to do so results in a failure to state a claim for which relief can be granted. Alexander, 848 F.3d at 707. Plaintiffs allegations appear to claim Plaintiffs attempted to buy the homestead, but that the

USDA refused.  (Docs. 1, 67-1).  Moreover, Plaintiffs' proposed amendments appear to claim that Plaintiffs attempts to purchase back the property sometime in 2014, presumably after the property was seized and sold by the U.S. Marshal to the United States as a result of a foreclosure action, Civil Action No. 96-00064.  (Doc. 67-1).

Plaintiffs fail to state a claim for relief under the ECOA.  Neither Plaintiffs' Complaint, nor Plaintiffs' proposed amendments establish that any of the Plaintiffs applied for credit with the USDA.  Plaintiffs alleged attempts to purchase property back which they allege was improperly seized in a foreclosure action does not establish a claim for relief under the ECOA.  Plaintiffs allege nothing more than conclusory allegations under the ECOA.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Iqbal, 556 U.S. at 679.  Plaintiffs' ECOA claims should be dismissed.

## III.   Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 67), and Motion for Leave to File Second Amended Complaint (Doc. 124) be **DENIED** as futile.

**IT IS FURTHER RECOMMENDED** that the 12(b)(1) and 12(b)(6) Motions to Dismiss (Doc. 107), filed by Defendants USDA, Perdue, and O'Neal, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss (Doc. 122) filed by Carroll, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' claims against remaining defendants Carroll, USDA, Perdue, and O'Neal under Louisiana law, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3) be **DISMISSED WITH PREJUDICE**, and Plaintiffs' remaining claims against Carroll, USDA, Perdue, and O'Neal be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the following motions be **DISMISSED AS MOOT**:  Plaintiffs' Partial Motion for Summary Judgment (Doc. 41); (2) Plaintiffs' Motion for Alternative Dispute Resolution (Doc. 45); Plaintiffs' Motion for Summary Judgment (Doc. 60); Plaintiffs' Motion for Declaratory Judgment to Quiet Title (Doc. 92); Kramer's Motion for Entry of Judgment (Doc. 95); Plaintiffs' Motion to Compel (Doc. 105); USDA and O'Neal's Motion to Dismiss Plaintiffs' Motion for Declaratory Judgment (Doc. 109); Plaintiffs' Motion for Scheduling Order (Doc. 111); Plaintiffs' Motion to Defer Defendant's Motion to Dismiss at Trial Pursuant to Rule 12(i) or in the alternative, Motion for Extension of Time to Resolve Pending Motions to Compel Discovery and Enter a Scheduling Order (Doc. 114);  Motion for Declaratory Judgment to Quiet Title (Doc. 119), and Motion to Return Farmland Belonging to the Estate of Ed Douglas and Odell Douglas, Motion to Compel (Doc. 125).

**IT IS FURTHER RECOMMENDED** that Plaintiffs' action be **DISMISSED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with

the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 23rd day of August, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge